# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ROBERT GUY DICKINSON,

                              Plaintiff,

   v.

                                                          9:11-CV-880

SHERIFF ROGER LeCLAIRE,                             (NAM/ATB)
Washington County Jail,

                              Defendant.

ROBERT GUY DICKENSON, Plaintiff, *pro se*
GREGG T. JOHNSON, ESQ. for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Norman A. Mordue, United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied adequate medical care and denied a bail hearing when he was incarcerated in the Washington County Correctional Facility ("WCCF"). (Compl.; Dkt. No. 1). Plaintiff also alleges various forms of negligence. Plaintiff seeks substantial monetary relief. (Compl. at pp.10-11).

Presently before the court is defendant LeClaire's amended motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 13). Plaintiff has not responded to defendant's motion. For the following reasons, this court will recommend that the court grant summary judgment in favor of defendant LeClaire and

will recommend dismissal of the complaint in its entirety as against all defendants.

## DISCUSSION

I. **Procedural History**

On July 27, 2011, plaintiff filed his complaint against three named defendants and "Washington County Correctional Facility Physicians and Nurses." (Dkt. No. 1). The named defendants were Sheriff LeClaire, Fred Jacobs, M.D., and the State of New York. (*Id.*) On November 1, 2011, Judge Mordue issued an order, dismissing the State of New York with prejudice. (Dkt. No. 2). Judge Mordue also noted that plaintiff could not sue the "Washington County Correctional Facility Physicians and Nurses," without naming individuals. (*Id.* at 3). The court ordered the Clerk to amend the docket sheet to add "John/Jane Does" to describe individuals who were part of the medical staff at WCCF.[1] (*Id.*) However, Judge Mordue also advised plaintiff that he would be required to identify these John/Jane Does and then file a motion to amend the complaint in order for the case to go forward against them. (*Id.* at 3 n.1).

Plaintiff paid the filing fee in this action, so he was advised in Judge Mordue's order, that service of process was plaintiff's responsibility. (*Id.* at 4). On November 1, 2011, the Clerk issued summonses and sent them to plaintiff so he could serve defendants. (Dkt. No. 3). On November 21, 2011, Patricia A. Dickson sent a letter to the court, indicating that she served "paperwork" on Sheriff Roger LeClaire and also

---

[1] Although Judge Mordue could have dismissed plaintiff's claim without prejudice, the court ordered this substitution in an effort to treat plaintiff's complaint with the liberality required for pro se litigants. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest").

2

"to the nurses and physicians at the Washington Correctional Facility." (Dkt. No. 4). In Ms. Dickson's letter, she also stated that "Officer George Bristol excepted [sic] the paperwork on behalf of the defendants . . . ." (*Id.*) None of the John or Jane Does were ever identified or served. There is also no indication that Dr. Jacobs was ever served in this action.[2]

The defense motion for summary judgment/judgment on the pleadings has been filed on behalf of the only defendant that has been named and served: Sheriff Roger LeClaire. Even though only one defendant has moved for summary judgment, this court will recommend dismissal as to all defendants at this time.

## II. Facts

### A. Medical Care

In a very disjointed complaint, plaintiff alleges that, while he was incarcerated at WCCF, he was denied proper medical care for his heel and his knee. Plaintiff states that "the Doctors and Medical Staff at [WCCF] never gave this Plaintiff . . . any proper X-Rays, nor did the staff and Doctors or Nurses have his right Knee and Heel corrected by straightening out the hardware from his injury." (Compl. at p.5).[3] Plaintiff claims that he saw the "Doctors and Nurses" once per month during his

---

[2] Plaintiff does include what he calls an "Affidavit of Service by Mail" with his complaint. (Compl. at 16). In this affidavit, he states that he mailed a copy of the "Federal Civil Claim" to various individuals, including Fred I. Jacobs, with an address in Saratoga Springs. However, there is no acknowledgment of service on the docket and no other indication that the complaint was properly served. Dr. Jacobs was not mentioned in the letter from Patricia A. Dickinson, in which she stated that she served the other defendants. (*See* Dkt. No. 4).

[3] The pages of the complaint appear to be numbered consecutively, so the court will cite to the number appearing on the actual complaint unless otherwise indicated.

3

incarceration, but that they only gave him an MRI and never did anything to alleviate his pain. (*Id.*)

In the complaint, plaintiff never alleges any specific dates that he claims he was denied proper medical care. He very generally states that the medical staff failed to do anything to help with his problems. However, attached to his complaint as Exhibit B, are various medical records indicating some dates that plaintiff was treated while at WCCF. The court will use the dates listed in the exhibits as a reference. (Dkt. No. 1-1 at 3-19, Ex. B).

### B.  Illegal Confinement

Plaintiff claims that he was "arrested" on April 17, 2008 and indicted on October 23, 2008. (Compl. at p.11). Plaintiff alleges that he "thereafter" served four months of a six month sentence. Plaintiff claims that after he "completed" his County Jail term, he was never afforded a bail hearing in violation of section 510.10 of the New York Criminal Procedure Law. (*Id.*) Plaintiff states that on August 17, 2009, the "Court" started a trial against plaintiff for "an entirely different case," but still did not give plaintiff a bail hearing. Plaintiff claims that, as a result, he was "illegally" incarcerated at WCCF from July 25, 2009 until he was convicted on the new charges and began a "State Prison Term" on September 10, 2009. (*Id.*) Attached to plaintiff's complaint as Exhibit A is an "Inmate Release Date Confirmation Form." (Dkt. No. 1-1 at p.2, Ex. A). This form is dated "September 16, 2009," and states that plaintiff's "MAXIMUM SENTENCE SERVED date" was September 18, 2009, but that his

"MINIMUM SENTENCE SERVED date" was July 20, 2009.[4] (Pl.'s Ex. A). Although there is a space for plaintiff's signature at the bottom of the page, plaintiff did not sign this form.

Defendant LeClaire has submitted additional documents related to plaintiff's state court sentences. (Def.'s Exs. A-D). Plaintiff's pre-sentence report "update," dated March 17, 2009, indicates that plaintiff was on probation for an offense committed in 2007, when he was arrested for a variety of alcohol-related traffic offenses on April 17, 2008. (Def.'s Ex. A). He was indicted on October 23, 2008 for the traffic offenses, and a Violation of Probation charge was filed on February 2, 2009, based upon the October 23rd indictment. (*Id.* at 1). On March 25, 2009, plaintiff was sentenced to nine months in the WCCF upon his guilty plea to the probation violation. (Def.'s Ex. B). An "Inmate Release Date Confirmation Form," dated April 15, 2009, states that plaintiff's "Date of Arrival" at WCCF was March 25, 2009, his "MAXIMUM SENTENCE SERVED date" was November 22, 2009, and his "minimum sentence served date" was August 21, 2009.[5] (Def.'s Ex. C).

On August 19, 2009, the Washington County Court issued a Uniform Sentence and Commitment" remanding plaintiff "without bail." (Def.'s Ex. D). The August 19th form lists the traffic charges for which he was arrested and indicted in 2008. (*Id.*) On

---

[4] The court notes that plaintiff claims only that he was illegally incarcerated from July 25, 2009 until September 10, 2009. It is unclear why plaintiff has chosen July 25th rather than July 20th, but the difference is not relevant to this court's recommendation.

[5] The "maximum sentence served date" reflected plaintiff's nine month sentence with credit for 31 days of time-served. The "minimum sentence served date" also includes credit for 91 days of possible good time. (Def.'s Ex. C).

September 10, 2009, the Washington County Court issued another Uniform Sentence and Commitment Order, indicating that plaintiff was convicted by "verdict" of a misdemeanor count of DWAI; one felony count of aggravated unlicensed operation of a motor vehicle; and a violation of failure to obey an officer. (Def.'s Ex. E). Plaintiff was sentenced to 6 months on the DWAI conviction, 1-3 years incarceration on the aggravated unlicensed conviction, and a fine on the violation charge. (*Id.*)

### III. <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show

6

that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

## IV. Municipal Liability

### A. Legal Standard

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies,

7

actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

### B. Application

It is unclear whether the County is a defendant in this case. However, even assuming that plaintiff named Sheriff LeClaire in his individual *and* official capacities, the complaint alleges only actions relating to plaintiff and does not state that there was any municipal policy responsible for the denial of plaintiff's medical care or the failure to afford plaintiff a bail hearing. Thus, there is no basis for municipal liability in this case. In any event, the court also finds that neither of plaintiff's claims has merit.

## V. Bail Hearing/Due Process/Eighth Amendment

The court assumes that plaintiff is raising a due process with respect to the denial of a bail hearing between the time that he claims he was scheduled to be released on July 25, 2009, until his "new sentence" on September 10, 2009. He may also be raising an Eighth Amendment cause of action regarding detention beyond the termination of his sentence.

### A. Legal Standards

Generally, in a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that

8

liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Inmates have a liberty interest in being released upon the expiration of their *maximum* term of imprisonment. *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993) (citing *Green v. McCall*, 822 F.2d 284, 287-90 (1987)). However, a violation of state law, resulting in additional confinement does not rise to the level of a proper section 1983 claim. *See Andujar v. Fischer*, No. 09-CV-489, 2010 WL 786298, at *2-3 (N.D.N.Y. Feb. 12, 2010), *Report Recommendation adopted* 2010 WL 786298 (N.D.N.Y. March 2, 2010).

Detention beyond the termination of a sentence may also constitute cruel and unusual punishment if it is the result of "deliberate indifference" to the prisoner's liberty interest. *Rivera v. Carroll*, No. 07 Civ. 7847, 2009 WL 2365240, at *6 (S.D.N.Y. Aug. 3, 2009) (citing *Wright v. Kane*, No. 94 Civ. 3836, 1997 WL 746457, at *4 (S.D.N.Y. Dec. 2, 1997) (internal citation omitted)). In order to establish an Eighth Amendment claim, the inmate must demonstrate that the prison official had knowledge of the risk that unwarranted punishment was or would be inflicted. *Id.* The

9

plaintiff must also show that the official either failed to act or took only ineffectual action under the circumstances, showing that he was deliberately indifferent to the inmate's problem. *Id.* Finally, the plaintiff must show a causal connection between the official's response to the problem and the infliction of unjustified detention. *Id.* (citing *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 163 (S.D.N.Y. 2007)).

B.  **Application**

In this case, the court need not determine whether holding plaintiff beyond his minimum[6] release date would have violated his due process or Eighth Amendment rights because plaintiff's claim has absolutely factual support based on the records submitted by defendant. Although plaintiff submits an "Inmate Release Date Confirmation Form," stating that he "arrived" at WCCF on March 25, 2009 and that his "MINIMUM SENTENCE SERVED date" was July 20, 2009, the court notes that this form is dated September 16, 2009, and could not have been given to him prior to that date. (Pl.'s Ex. A, Dkt. No. 1-1 at 2). It is apparent that this Form relates to plaintiff's six-month sentence, imposed on September 10, 2009, following his conviction on various alcohol-related traffic offenses. (*Id.*; Def.'s Ex. E).

Defendant has filed another "Inmate Release Confirmation Form," dated April 15, 2009, shortly after plaintiff pled guilty to the probation violation. (Def.'s Ex. C).

---

[6] In *Peterson v. Tomaselli*, the District Court pointed out that at least one circuit has held that the Eighth Amendment issue arises when a plaintiff is held beyond his "maximum" sentence, rather than beyond his "conditional" or "minimum" release date. 469 F. Supp. 2d at 162 (citing *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989)). The court in *Peterson* also noted that the Second Circuit cited *Diecks* in *Calhoun*, where the court found that detention for five days beyond expiration of a maximum sentence did not rise to a constitutional violation. *Id.* (citing *Calhoun*, 999 F.2d at 647).

This form clearly indicates that at the earliest, plaintiff would have completed his sentence on the probation violation on August 21, 2009, even crediting plaintiff all the good time to which he might be entitled.[7] Plaintiff signature appears at the bottom of this form. (*Id.*) This finding is supported by the Uniform Sentence and Commitment Form, dated March 25, 2009, indicating that plaintiff pled guilty to a "VOP" and was resentenced as a probation violator. (Def.'s Ex. B). On August 19, 2009, two days prior to the expiration of minimum probation violation term, plaintiff appeared before a County Court judge on the traffic violations and was clearly "Remanded Without Bail." (Def.'s Ex. D).

Based on the evidence in the record, there is no question that plaintiff was still serving his probation violation sentence between July 25, 2009 and August 19, 2009. He had a bail hearing on August 19, 2009 and was remanded without bail pending the trial on his traffic charges. Plaintiff was not entitled to, nor was he illegally deprived of, a bail hearing on July 25, 2009, and his due process claims may be dismissed as meritless. Additionally, he was not held beyond either his minimum or his maximum release date for purposes of any Eighth Amendment claim. Even if both of the Inmate Release Date Confirmation Forms existed, defendant would have been entitled to rely on the form indicating that plaintiff's minimum term on the probation violation would not expire until August 21, 2009, and thus, plaintiff could not meet the first criterion for an Eighth Amendment claim: that the defendant was aware of the risk of

---

[7] As noted above, the maximum term would not have expired until November 22, 2009, a nine month sentence from March 25, 2009, with 31 days of "time served." (Def.'s Ex. C). The court notes that the probation department had recommended a year sentence, but plaintiff was sentenced only to nine months on the violation.

11

unwarranted "punishment." Any Eighth Amendment claim related to his detention would also be subject to dismissal.

## VI. Medical Care

### A. Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). When a prisoner alleges "a temporary delay or interruption in the provision of

otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 F. App'x at 236 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan*, 511 U.S. at 844. Thus, the court stated in *Salahuddin*, that the defendant's believe that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d

13

at 281.

A plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### 2. Application

First, the court would point out that plaintiff has not identified any of the staff of WCCF, who he claims actually denied or delayed his medical care, nor has he indicated the dates of any such delays or denials. He does not allege that defendant

14

LeClaire was in any way involved with his medical care.[8] Plaintiff never served defendant Jacobs, who is apparently an "outside" podiatrist. Plaintiff has attached some medical records that pertain to his foot and knee problems.[9] (Dkt. No. 1-1, Ex. B). Notwithstanding plaintiff's failure to serve the proper defendants,[10] the court finds, based on the documents submitted by plaintiff, that his medical care claims have no merit.

A review of these documents shows that plaintiff simply disagreed with the treatment that he received. In April of 2008, plaintiff was prescribed Excedrin for his knee pain and restricted to a "downstairs cell." (Dkt. No. 1-1 at 18). In May of 2009, a bottom bunk was ordered for plaintiff because of his knee. (*Id.* at 17). On May 10, 2009, he asked to see "the Dr." because plaintiff was having chest pains and pains in his knee. (*Id.* at 3). On the same date, he was prescribed Naprosyn for pain and Prilosec for his "heartburn." (*Id.*) On May 26, he complained that his knee was getting worse. (*Id.* at 4). He was seen three days later, and the examination showed a surgery scar with some crepitus, but no swelling or redness. On June 4, he complained about his knee and was told to allow more time for the Naprosyn to work. (*Id.* at 5). He was seen again on June 18, when he claimed that he knee hurt when he walked and after lying down for a long time. (*Id.* at 6). He stated that "a good pair of

---

[8] Because the court finds that plaintiff's medical care claim has no merit, and it is unclear that plaintiff is even suing defendant LeCLaire for plaintiff's medical care, the court need not discuss the fact that plaintiff has alleged insufficient personal involvement by defendant LeClaire.

[9] With the exception of one or two pages, the signatures at the bottom of the records are completely illegible.

[10] The court will discuss the plaintiff's failure to serve below.

15

shoes would help and an ice pack." He was given an ice pack. (*Id.*) On June 23, 2009, he stated that he stopped taking the pills because they were not helping. (*Id.* at 7). He was told to try Ibuprofen on June 29, 2009. (*Id.*)

On July 25, 2009, plaintiff complained about the pain in his heel, and he requested a "good pair of shoes or insoles." (*Id.* at 8). On August 7 and 20, 2009, he complained about his heel again. (*Id.* at 10). Plaintiff's examination showed that his left heel was "tender over [the] plantar aspect," and he was referred to podiatrist, Dr. Jacobs to determine whether plaintiff had plantar fascitis or a heel spur. (*Id.*) The appointment with Dr. Jacobs was for September 9, 2009. (*Id.*) Plaintiff complained again on August 26, 2009, and he was reminded that his appointment with Dr. Jacobs was "coming up." (*Id.* at 11).

The records indicate that plaintiff complained about his heel again on September 1 and 14, 2009. (*Id.* at 13). A progress note dated September 9, 2009, written by a nurse states that in a telephone report from Dr. Jacobs, he stated that the location of plaintiff's pain did not indicate a bone spur. (*Id.* at 14). Dr. Jacobs ordered an x-ray, and gave plaintiff insoles and a prescription, stating that he could wear his own shoes. (*Id.*) The doctor stated that if the pain did not resolve, he would order another x-ray, and he also prescribed an anti-fungal and Motrin. On September 15th, the nurse wrote that plaintiff's x-ray was faxed to Dr. Jacobs, and the nurse was waiting for a telephone call from the doctor. (*Id.* at 13). The doctor's notes have also been included in plaintiff's exhibits, and they are consistent with the nurse's report. (*Id.* at 15). His handwritten notes state that the September 9 or 10 examination was

Dr. Jacobs's "initial exam" of plaintiff. (Dkt. No. 1-1 at 15).

Assuming that plaintiff actually named any defendants, to the extent that plaintiff alleges various forms of negligence, plaintiff's claim would have to be dismissed. As stated above, negligence, even amounting to malpractice, does not state a constitutional claim. *See Sonds*, 151 F. Supp. 2d at 312. Additionally, plaintiff has not shown that either his heel pain or his knee pain was serious enough to constitute a serious medical need. Finally, even assuming a serious medical need, there is absolutely no indication that any of the staff was deliberately indifferent to plaintiff's medical problems. The records all indicate that whenever plaintiff complained, he was seen, either on the same day, or within a few days of his complaint. The fact that plaintiff disagreed with the prescribed care, thought he should have gotten "surgery"[11] or was in any way unhappy with the timing of his care, does not rise to the level of a constitutional claim. Thus, plaintiff's medical care claim would be subject to dismissal even if he had properly served Dr. Jacobs, and even if he had named some individuals in the medical staff at WCCF.

## VIII. Service of Process

### A. Legal Standard

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). The failure to serve a defendant within 120 days

---

[11] It is unclear what kind of surgery plaintiff thought he needed. He apparently had a prior surgery to his knee and believed that the pain would be resolved by further surgery. There is no evidence of that in the medical reports, and plaintiff does not specify the problem. The court notes that plaintiff's own exhibits show that his first visit with Dr. Jacobs was days before he went into New York State custody, and Dr. Jacobs was clearly attempting to determine what was causing plaintiff's heel pain.

of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.* If the court raises the issue on its own motion, the court must provide plaintiff with notice that the complaint is subject to dismissal. (*Id.*) If plaintiff shows good cause for failure to effect service, the court must extend the time for an appropriate period to allow plaintiff to complete service. (*Id.*)

### B. Application

As a final note in this case, the court would point out that it appears that plaintiff failed to properly serve defendant Jacobs, and plaintiff never identified or served any of the John/Jane Does that Judge Mordue indicated would be necessary to identify if plaintiff wished to proceed against any defendants in plaintiff's medical care claim.

The complaint in this action was filed on July 27, 2011. (Dkt. No. 1). In Judge Mordue's November 1, 2011 order, plaintiff was told that it was his responsibility to serve the named defendants. (Dkt. No. 2 at 4). After dismissing the State of New York as a defendant, the court ordered the Clerk to issue summonses for Dr. Jacobs and Sheriff LeClaire and forward them to plaintiff for service. Because plaintiff is pro se, and he may not have understood his responsibility to serve defendants when he filed the complaint, the court will count 120 days from the date of Judge Mordue's November 1, 2011 order: February 29, 2012. Plaintiff served the defendants at WCCF, but to this day, has failed to properly serve Dr. Jacobs.

Notwithstanding the liberality with which the court has determined the date to

18

start the running of the 120 days, plaintiff's medical care claim would have been subject to dismissal based upon his failure to serve Dr. Jacobs. Plaintiff was well aware of his responsibility, and it is clear from the complaint that plaintiff had Dr. Jacobs's address. (Compl. at p.16). Plaintiff states in his "Affidavit of Service" that he sent the complaint to Dr. Jacobs, but there is no proof of service on the docket as required by Fed. R. Civ. P. 4(l). Plaintiff is clearly aware of this requirement because Patricia A. Dickenson filed a proof of service as to defendant LeClaire.

However, if the court were going to recommend dismissal based on the failure to serve, the court would have to give plaintiff notice and an opportunity to properly serve the defendants. Because this court has found that regardless of plaintiff's failure to serve and/or identify and serve the unknown medical staff, his claims against any of the defendants are meritless, the court will not recommend that the court consider plaintiff's failure to serve. An extension of time to properly serve would be futile.

## IX.  Miscellaneous Claims

Defendant also argues that, to the extent that plaintiff raises state law claims, he has failed to satisfy the condition precedent, prescribed by N.Y. General Municipal Law § 50-e and the statute of limitations prescribed by § 50-i. This court has found that plaintiff has not stated any constitutional claims, thus, to the extent that he stated any supplemental state law claims, the court need not determine whether plaintiff has satisfied New York law, and should decline to consider any supplemental state law claims under 28 U.S.C. § 1367(c)(3).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant LeClaire's amended motion for summary judgment (Dkt. No. 13) be **GRANTED**, and the complaint dismissed as to defendant **LECLAIRE IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES**, and the complaint be **DISMISSED IN ITS ENTIRETY AS TO ALL DEFENDANTS.**

Dated: December 17, 2012

Hon. Andrew T. Baxter
U.S. Magistrate Judge